We will now proceed to the sixth case, United States v. Price. Ms. Garst. Good morning, Your Honors. My name is Hannah Garst. I represent defendant appellant David Price. This is a case that involves statutory interpretation. When Congress authorized discretionary restitution pursuant to 18 U.S.C. 3663, the plain language of the statute demonstrates that Congress did not intend for federal courts to redistribute funds to family members of participants or co-conspirators of the offense. Now, the question that we've raised today — They're not making a derivative claim. They're making a first-party claim. Congress is making a first-party claim to the co-defendant or the participant. This is not a derivative claim. Your whole argument is that their claim to victim status, and therefore entitled to family members and the funeral homes, and therefore their right to restitution is derivative of their deceased relative and client, I guess is what you would call the relationship to the funeral home. These are not derivative victim claims. These are first-party victim claims. Well, the problem here is that the amount of restitution, it directly stems from Mr. Holden's death. Right, but it's their losses attributable to your client's conduct. They're not standing in the shoes of his deceased co-conspirator whom he murdered. They're standing in their own shoes and saying, We lost money to pay for the funeral where he was killed due to his involvement in the conspiracy. That's the fact pattern, but that does not make their claims derivative in the legal sense. They're standing in their own shoes as victims of your client's conduct. I understand what the Court's saying. I think the problem is, is that when you look at the plain language of the statute, that it seems that Congress was attempting to not have these funds redistributed even to the families. If we start opening up restitution to the families of these drug cases, the list of victims can go on and on. Here, I mean, even when you look at the statute, it just says participants can't be victims. These victims were not participants. Well, they weren't participants, but the money that they're collecting is directly linked to a participant. Right, but that doesn't matter. They're not participants. Your whole argument is based on this odd construction of the statute to apply to third-party victims. I think the problem here is that it's taking victims too far. Even if you look at his mother, his mother is a victim because she has to pay funeral costs. She wasn't there. She wasn't at the scene. There was nothing that places her there. She is a victim merely by, in the Court's interpretation, she's a victim solely because she's having to pay for funeral costs versus Roshunda King, who is paying funeral expenses. And I understand that the restitution statute does allow for funeral expenses. There's no question of that. But the question is, when the funeral expense is for a co-defendant, who was involved in the case, is that proper? Is that really what Congress intended when they put in this prohibition for participants of the offense? Now, neither we did not cite and the government really has not cited, there's not case law out on this issue. The cases really only have to do with the co-defendants themselves. But, as the Second Circuit said in Reifler, any order, even under the Mandatory Victim Restitution Act, which doesn't have this prohibition, that has the effect of treating conspirators as victims and thereby requires restitutionary payments to the perpetrators of the offense, and I understand this is to the family, contains errors so fundamental and so adversely reflecting on the public reputation of the judicial proceedings that we may and do deal with it suspente. Are you saying that they were beneficiaries while Holden was alive and they got money from him and therefore they're not victims? Your Honor, I have no idea if they were beneficiaries of Mr. Holden. I mean, Roshunda King was his fiancée, so you would assume they had children together. You assume that they were sharing finances, but the record does not contain anything of that. At least the way I look at this, what it implies is they have to come up with the money. All that money has been confiscated, forfeited, et cetera. So wherever that is, they don't have access to it. They're having to come out of their own pocket to pay for the funeral and whatever else they are. And that's where I assume your argument is, well, while he was alive, they were, I'll call it, well off financially. Your Honor, I'm not sure what their financial status was. All right, well, that's not your issue then, I guess. I would like to point out, though, that when we look at Roshunda King's, the money that was ordered for restitution, part of the funeral expenses that was included by the government was for the purchase of a headstone in the future. The case law in this circuit has been that the restitution has to be based on actual loss. The headstone was not an actual loss. It hadn't been purchased. There was no – it was to be purchased in the future. And so we would submit that that's not properly included under restitution and the court wouldn't have authority to order something to be paid in the future. What about the other costs? As far as Ferguson Funeral Home, I think that they are an indirect victim, but they would not be considered a direct victim. They are in the business of funerals. Whatever agreement that they had with Roshunda King and Linda Holden, that's really beyond the scope of the restitution and what should be ordered to what can be considered a victim under restitution. That argument wasn't made in the opening brief. Your Honor, it wasn't specifically made in the opening brief. I think in the opening brief we challenged the restitution as a whole. The government came back and started talking about each of them separately, and we responded in the reply brief. But we clearly had set out from the beginning that all of the restitution, that we were challenging all of the restitution order. Right, but the argument, the sole argument that was made, had to do with this interpretive question about whether these folks were participants and whether there had to be withdrawal, evidence of withdrawal, and a finding that the co-conspirator withdrew at the time he was killed. That was the whole argument at that point in time. The backup argument didn't come until later. The withdrawal argument was made by the government. We did not make the withdrawal argument, and we do not feel that there's any exception under the participant limitation for withdrawal for minor participant, that there's nothing of the sort. Right, but the argument hinged entirely on this idea that a participant, a co-conspirator, can't get restitution. It hinged on that a participant cannot receive restitution and that the government was essentially skirting that by ordering that same amount that would have been to a participant, to family members, and the funeral home for that. Right, but you never argued that even if we lose on that point, the headstone is out, the funeral home is out, for these separate reasons. That didn't come up until the reply brief, which is too late. We did not specifically point those out as argument. No, that's too late, especially under plain error review. Well, Your Honor, we would submit that, although it was not as artfully stated as should have in the opening brief, that, again, this is a matter of whether the district court had the authority under the statute to bring those. I see I'm in my rebuttal, but I may reserve a chance of time. Thank you. Ms. Krull. May it please the court. Good afternoon, Your Honors. My name is Angel Krull, and I represent the Appalachee, the United States of America. The district court did not plainly err in ordering the defendant to pay approximately $11,000 in restitution for the funeral expenses of Gregory Holden after making a finding that the defendant actually killed Gregory Holden. Now, the standard of review here is plain error, because the defendant, despite having at least three opportunities to make an objection to the restitution request in the district court, did not do so, not at the sentencing hearing, not in response to the written filing that the government made, and then not at the hearing for restitution. And so the review is for plain error. The defendant is now raising for the first time that restitution was inappropriate because the defendant did not qualify as a victim because he was a participant in the offense. And Judge Spikes, you're correct that the government's position here was that the restitution was ordered to non-participants, being the defendant's family members and also to the funeral home, who subsidized a portion of the expenses because the family here did not have the means to pay the full amount. Now, to answer your question, Your Honor, about whether or not the family was well off, there was evidence in the record, and actually Ms. King testified, that she worked a full-time job. She was working a legitimate job, not in the drug business whatsoever. And at the time of the murder, which was in December 2011, Mr. Holden had withdrawn from the conspiracy for at least three months at that point. He withdrew from the conspiracy in October of 2011 when the DEA had approached him. He immediately agreed to cooperate with the government, and therefore he was no longer selling drugs. He was no longer in the conspiracy. And so the person who was supporting the family at that point certainly was Ms. King, who had a full-time job. Now, they are victims in their own right. The family suffered direct and proximate harm from the death of Greg Holden, including these funeral expenses. Ms. King... Ms. Krull, what would be the outer limits on restitution to Mr. Holden's family? Would it go beyond these expenses? It depends on how they were directly and proximately harmed. I think it's pretty clear... Was he engaged in gainful employment? Mr. Holden? No, he was not. And so lost wages would not be included. We were not seeking any kind of lost wages for Mr. Holden's future employment because he was not engaged in legitimate employment. What if he had been? If he had been, then yes. I don't think so. That's in the nature of a measure of damages for a wrongful death claim. And then that's a first-party claim. That's a claim that belongs to the estate of the deceased, and the deceased is a participant, so then you're squarely within the statutory prohibition. I think that goes to Judge Blum's question here. We do have as our secondary argument that because Mr. Holden did withdraw from the conspiracy that he is no longer deemed a participant. And there is, in fact, a case cited in the reply brief that does support that. It's the Senga case. And in that particular case, the victim there was once a participant in the crime of alien smuggling. And at some point during the crime, she changed characterizations from a participant to a victim, and the court there held that restitution was appropriate there. So there is some case law here. However, we're on a plain error standard here. And so when we're trying to determine whether or not what it means to be a participant, the question that we have to ask ourselves is, is this error, this withdrawal theory, is that something that is so outrageous, so obviously wrong, that a reversal is necessary? And the argument here is no, it's not. When you're having a situation where the reason that Mr. Holden was murdered was because he withdrew from the conspiracy. The reason he was murdered was because he was no longer a participant. Because he was murdered, he was murdered because they didn't want, the defendant didn't want him testifying. And so that, there's no question that he wasn't a participant at that point. He was murdered because he wasn't a participant. And so that would not shock the conscience. It would not be so outrageous to order restitution in a situation like that. To hold that the definition of participant means that you can withdraw. Do we even have to get into any of that here? No, you don't. Because our first position is that the victims here stand in their own shoes, as you put it. That they did suffer losses that were directly and approximately related to the killing of Greg Holden. I do want to address the two issues, one with respect to the funeral home, and the second with respect to the headstone. With respect to the funeral home, the issue here is that the family didn't have the funds to pay the full amount. So basically they owed a debt to the funeral home. And the funeral home subsidized a portion of the funeral because the family couldn't pay it all. Now if you look in the statute, if you look in 3664 subpart J, there's a provision there that allows for insurance companies or other entities who stand in the shoes of the victim where the victim can get compensated by a third party. And then later when they're ordered restitution, the third party can claim restitution. It's often used in situations of insurance payouts. Our argument here is that this is a similar situation where a third party can get paid under a plain error standard. It was never challenged in the district court that it wouldn't be so obvious that the funeral home couldn't get paid. Obviously Congress did not intend that people without means couldn't get restitution, or people who don't have the means to front a full funeral couldn't get reimbursed for that, and that the funeral home should be out and that only people who can afford it can get the restitution. That couldn't be what Congress intended. Now with respect to the headstone, I disagree with counsel's argument that actual loss is defined in the way that she is claiming it is. The cases that she cites in her brief have to do with financial fraud cases. That contrasts actual loss with intended loss. This is not a situation where we're looking at actual loss versus intended loss. A headstone is a normal and customary process, an expense that is associated with a funeral. There's nothing outrageous, there's nothing unusual about getting a headstone for someone when they pass away. It's a normal expense and it should be included. It's actually a very modest expense here that was claimed and ordered by the district court as it was laid out in the government's filing. The three quotes that were taken for the headstone was only for $1,000. But again, on the plain errors standard and also because it wasn't raised until the last minute, we do believe that it was appropriate for the district court to enter the restitution. How about expenses for immediate family members to travel to the funeral? That was put on a credit card, let's say, Well, then we would be getting in a situation where the district court would have to make a factual finding about what's reasonable under the law, under the statute. And if someone was flying first class, the district court might say, no, that's not. Let's not get into where you are on the aircraft. I'm just trying to see where the parameters are on a district judge's discretion in this kind of a setting. So take our hypothetical of six siblings who live out of town without means to attend the funeral. Does the district judge direct those expenses be covered? I don't think that it would be unreasonable, and here's why, Your Honor. There are cases that do explore that issue. They're not cited in the briefs because that wasn't an issue that was raised. However, I see my time is up, may I answer? No, you certainly can answer. They often arise in the area where there are Native American funerals because we're often seeing those in districts that have a lot of cases in those areas. And what the judges will do, we'll look at what is customary for those particular types of religious services. And there are different types of services that have different expenses, and so what the courts do are that they make a factual finding about what is reasonable and customary under the circumstances. And if something seems to be out of the ordinary or unusual, the district court has that discretion to determine that that's not fair. Thank you, Ms. Croft. Thank you. Ms. Garz? Two short points. The Senga case that the government's referring to, in that case it was about Quinlob, who was a participant. But the Ninth Circuit said in that case that the analysis was informed by the fact that she was not named as a co-conspirator, she had a very minor role in the conspiracy, and her persecution, which is what the restitution was based on, began after the completion of her small part in the conspiracy. She was actually brought over and then used as a human slave, and they said just because she had something to do with entering illegally didn't mean that she was agreeing to be a slave, and so therefore she was entitled to restitution. That's very different than what we have here. And to your point, what are the outer limits? I think the question here is where does it end? How many family members? I see my time is up. You may respond to that. What family members are included? Why should it just be the mother and the fiancé? Where does it end? And I think that that is the question that is here, especially when, under this Act, it has this prohibition that there was some intent for this to be different than a mandatory victim restitution Act case. And I think your question is a good one, Your Honor. Thank you, Ms. Garce. Thanks to all counsel. Ms. Garce, you have the additional thanks to the court for accepting this appointment. Thank you, Your Honor. The case is taken under advisement, and the court will stand in recess. Thank you.